UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DELIA A. BELLA, | ) No. CV 13-4585-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 5, 2013, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on August 2, 2013, and August 6, 2013.  Pursuant to the Court's Order, the parties filed a Joint Stipulation ("JS") on March 20, 2014, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on November 22, 1961. [Administrative Record ("AR") at 61, 117.] She has a tenth grade education, and past relevant work experience as a floral assistant. [AR at 41-42, 62, 142.]

On September 20, 2010, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that she has been unable to work since January 1, 2005. [AR at 26, 117-26, 137, 159.] After her application was denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 26, 67-73.] A hearing was held on September 21, 2011, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 26, 38-57.] A vocational expert ("VE") also testified. [AR at 52-56.] On October 27, 2011, the ALJ determined that plaintiff was not disabled. [AR at 33.] When the Appeals Council denied plaintiff's request for review on May 10, 2013, the ALJ's decision became the final decision of the Commissioner. [AR at 1-6, 17]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to

perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date, September 20, 2010. [AR at 28.] At step two, the ALJ concluded that plaintiff has the severe impairments of diabetes, back pain, and asthma. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 30.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform light work as defined in 20 C.F.R. § 416.967(b),[2] with limitations to "avoid dust, fumes, pollutants, and temperature extremes." [Id.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff "is capable of performing past relevant work as a floral assistant." [AR at 33.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since September 20, 2010. [AR at 33.]

/
/
/

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to provide a legally sufficient rationale for rejecting the opinion of an examining physician. [JS at 4-8, 14-15.] As explained below, the Court agrees with plaintiff and remands for further proceedings.

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a[n] . . . examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

On April 20, 2010, Dr. David J. Campisi conducted a physical examination of plaintiff. [AR at 242-47.] Dr. Campisi diagnosed plaintiff with "alcoholic cirrhosis of liver," "extrinsic asthma, unspecified," "lumbago," "major depressive affective disorder, recurrent EPI," "polyneuropathy in

diabetes," and "diabetes with neurological manifestations, Type II." [AR at 245.] Summarizing his findings, Dr. Campisi wrote:

> [Plaintiff] has a chronic alcoholic cirrhosis which is fairly well compensated at this time. She has severe depression with poor ability to concentrate and follow through with tasks. She has poor endurance and easy fatigue due to her liver disease and poor memory all of which combine to prevent her from doing even sedentary work.

[AR at 246.]

On April 21, 2010, Dr. J. Lightfoot, a nonexamining physician, completed a "Physical Residual Functional Capacity Assessment," opining that plaintiff can "lift and/or carry" 20 pounds occasionally and 10 pounds frequently; "stand and/or walk" for "about 6 hours in an 8-hour workday[;]" sit for "about 6 hours in an 8-hour workday[;]" and must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. [AR at 248-53.]

In an "Independent Internal Medicine Evaluation" on November 23, 2010, Dr. Ursula Taylor diagnosed plaintiff with hypertension, back and joint pain, diabetes, and a history of asthma. [AR at 293.] Dr. Taylor opined that plaintiff "is able to lift and carry 20 pounds occasionally and 10 pounds frequently, limited due to shortness of breath with the history of diabetes," and "is able to walk and stand no more than six hours out of an eight-hour day." [AR at 294.] Dr. Taylor further opined that plaintiff "should avoid fumes, dust, pollution, extremes in temperature, gases and chemicals and obviously should not be smoking due to shortness of breath." [Id.]

On December 13, 2010, Dr. E. Christian, a nonexamining physician, completed a "Physical Residual Functional Capacity Assessment," opining that plaintiff can "lift and/or carry" 50 pounds occasionally and 25 pounds frequently; "stand and/or walk" for "about 6 hours in an 8-hour workday[;]" sit for "about 6 hours in an 8-hour workday[;]" and must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. [AR at 296-303.]

In evaluating the medical evidence, the ALJ assigned "significant weight" to Dr. Lightfoot's opinion, "as it is generally supported by the objective medical evidence, treating history, and clinical signs" in the record. [AR at 32.] He also assigned "significant" weight to Dr. Taylor's opinion, "as it is supported by the objective medical evidence, treating history, and clinical signs

and symptoms" discussed in his decision. [Id.] The ALJ assigned "less weight" to the opinion of Dr. Christian, explaining that it is "not consistent with the record." [AR at 33.]

Without indicating what weight, if any, he assigned to Dr. Campisi's opinion, the ALJ referred to Dr. Campisi's April 20, 2010, examination of plaintiff as follows:[3]

> As to [plaintiff]'s asthma, the medical evidence of record shows a normal respiratory examination (Exhibit B6F/3). Moreover, a report dated April 2020 [sic] indicates no shortness of breath, no cough, and [plaintiff] is able to walk without dyspnea (Exhibit B6F/4).
>
> *****
>
> The medical evidence of record reveals that [plaintiff]'s back pain fluctuates and occurs intermittently, with no radiation of pain (Exhibit B6F/1). A report dated April 20, 2010 indicates that [plaintiff] takes over the counter medication such as acetaminophen for relief (Exhibit B6F/1). Furthermore, the medical evidence of record indicates that [plaintiff] is negative for bone/joint symptoms and weakness (Exhibit B6F/2). Examination of the back/spine indicates no kyphosis, no scoliosis, normal flexion, normal lateral flexion, normal rotation, negative straight leg raising, and negative elevated leg test (Exhibit B6F/4). The neurological examination does not show any signs of sciatic nerve involvement (Exhibit B6F/4).

[AR at 32.]

As a preliminary matter, the Court concludes that the ALJ implicitly rejected the portion of Dr. Campisi's opinion containing functional limitations (i.e., "poor ability to concentrate and follow through with tasks," "poor endurance and easy fatigue," "poor memory," and inability to do even sedentary work) by giving "significant weight" to the opinions of an examining and nonexamining physician who each assigned plaintiff an RFC that did not contain such limitations. See Romero v. Astrue, 2011 WL 9038, at *1 (C.D. Cal. Jan. 3, 2011) (ALJ's RFC determination held to constitute an "implicit rejection" of the examining physician's opinion where the ALJ failed to include the examining physician's limitation in his RFC determination); Smith ex rel. Enge v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D. Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter). Thus, as the ALJ failed to provide any reasons, let alone specific and legitimate reasons, for

---

[3] Exhibit B6F is Dr. Campisi's report. [See AR at 242-47.]

rejecting Dr. Campisi's opinion, his decision is not supported by substantial evidence.[4] See Lester, 81 F.3d at 830; Social Security Ruling ("SSR")[5] 96-8p, 1996 WL 374184 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"); see also Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) ("We hold that the ALJ erred because he neither explicitly rejected the opinion of [the examining physician], nor set forth specific, legitimate reasons for crediting [the nonexamining physician] over [the examining physician].").

Moreover, the ALJ appears to have selectively relied on only those portions of the record that supported his desired outcome. See Reddick, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (citation omitted). In particular, although he never acknowledges Dr. Campisi as an examining physician, or mentions Dr. Campisi's medical diagnoses or functional assessment of plaintiff [AR at 246], the ALJ does include several of Dr. Campisi's evaluation notes, which arguably support the ALJ's ultimate nondisability finding. [See AR at 32 (citing AR at 242-45 for findings of, e.g., "normal respiratory examination," "no kyphosis,

---

[4] Even assuming the opinions of Dr. Lightfoot and Dr. Taylor constituted "substantial evidence," the ALJ is still required to provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the opinion of Dr. Campisi, an examining physician. Carmickle, 533 F.3d at 1164.

[5] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

no scoliosis, normal flexion, normal lateral flexion, normal rotation, negative straight leg raising, and negative elevated leg test," and "[no] signs of sciatic nerve involvement.").]

Finally, defendant asserts, among other things, that "Dr. Campisi's opinion was entirely unsupported by the record as a whole, and even by his own findings upon examination;" that Dr. Campisi, "a doctor performing an internal medicine examination," "has insufficient foundation for his assessment of the limiting effects of [p]laintiff's mental impairments;" and that, "[a]s Dr. Campisi's opinion relied on [p]laintiff's subjective complaints, it could not be credited in light of the ALJ's correct finding that she was not credible." [JS at 9-11.] In his decision, the ALJ did not rely on these or any other explanations to reject Dr. Campisi's opinion. "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted).

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Campisi's opinion. As a result, the ALJ's opinion is not supported by substantial evidence and remand is warranted.

/
/
/
/
/
/
/
/
/
/
/
/

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is warranted in order for the ALJ to reconsider the opinion of plaintiff's examining physician, Dr. Campisi. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 3, 2014

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE